# United States District Court

### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| RORY JUSTIN CYPERS, | § | |
| | § | |
| *Plaintiff*, | § | Civil Action No. 4:21-CV-00382 |
| v. | § | Judge Mazzant |
| | § | |
| PHI-BCC, LLC; BANKCARD CENTRAL, | § | |
| LLC; PAYMENT HOLDINGS, LLC; | § | |
| LARRY DANIELS; REV 19 LLC; DOES 1 | § | |
| THRU 20, | § | |
| | | |
| *Defendants*. | | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant J. Larry Daniels': (1) Motion To Dismiss For Lack Of Personal Jurisdiction; (2) Motion To Dismiss For Failure To State A Claim Upon Which Relief Can Be Granted; And (3) Motion To Dismiss For Plaintiff's Failure To Comply With FRCP 9(b) (Dkt. #17).  Having considered the motions and the relevant pleadings, the Court finds the motions should be **DENIED**.

## BACKGROUND

This case arises from a judgment (the "Judgment") issued by the United States District Court for the Central District of California against Defendant BankCard Central, LLC ("BankCard"), a processor of credit card services and a Texas limited liability company (Dkt. #9 ¶ 12).[1] Plaintiff Rory Justin Cypers ("Cypers") obtained this Judgment against BankCard on March 31, 2017 for $91,302.00 in damages and $12, 852.56 in interest (Dkt. #9 ¶ 12). BankCard appealed the case to the Ninth Circuit, but before the court issued its mandate, the business and assets of BankCard were sold to REV19, LLC ("REV19") through a plan allegedly orchestrated by

---

[1] Each of the entity defendants in this case is a Texas limited liability company.

Defendant Larry Daniels ("Daniels"), Defendant Payment Holdings, LLC ("PHL"), and BankCard (Dkt. #9 ¶¶ 15–16).

Prior to the sale, on or around April 23, 2018, BankCard changed its name to PHI-BCC, LLC, ("PHI") a Defendant in this case, and an entity Cypers alleges is the same as that for PHL— the company for which Daniels serves as Chief Executive Officer (Dkt. #9 ¶ 16(b)). Also on April 23, 2018, an entity known as REV19 BCC—formed by REV19 in January 2018—changed its name to "BankCard" (Dkt. #9 ¶ 16(e)). Then, on January 25, 2019, PHI (previously BankCard), forfeited under section 171.309 of the Texas Tax Code.[2] Approximately two weeks later, the Ninth Circuit issued its opinion affirming the Judgment of the district court, but to date, no amount of the Judgment has been paid (Dkt. #9 ¶ 20).

Cypers brings this action under Texas Civil Practice & Remedy Code § 35.008 against Daniels in his individual capacity, as well as PHI, REV19, BankCard, and PHL (collectively, the "Entity Defendants") to enforce the outstanding Judgment. Cypers also brings claims under sections 24.006 and 24.005 of the Uniform Fraudulent Transfer Act (the "UFTA") for fraudulent transfers of BankCard's stocks and assets.

---

[2] Recognizing the somewhat complex nature of the entity name changes, the Court provides the following chart, wherein bolded names represent ongoing entities:

| PHI Sub I, LLC | May 21, 2015 changes name → | BankCard Central, LLC (Daniels, President) | April 23, 2018 changes name → | **PHI-BCC, LLC** (believed to be same as PHL) → | January 25, 2019 **PHI-BCC, LLC** forfeits Under Texas Tax Code |
|---|---|---|---|---|---|
| **REV19** | January 26, 2018 **REV19** forms REV19 BCC | REV19 BCC | April 23, 2018 changes name → | **BankCard Central, LLC** → | Remains active entity in Texas |

On July 28, 2021, Daniels filed the present motion to dismiss for lack of personal jurisdiction and failure to state a claim upon which relief can be granted (Dkt. #17). On August 11, 2021, Cypers filed his response (Dkt. #19). On August 18, 2021, Daniels filed his reply to Cypers' response (Dkt. #24).

## LEGAL STANDARD

When considering the motion to dismiss, "[a]llegations in [a] plaintiff's complaint are taken as true except to the extent that they are contradicted by defendant's affidavits." *Int'l Truck & Engine Corp. v. Quintana*, 259 F. Supp. 2d 553, 557 (N.D. Tex. 2003) (citing *Wyatt v. Kaplan*, 686 F.2d 276, 282–83 n.13 (5th Cir. 1982)); *accord Black v. Acme Mkts., Inc.*, 564 F.2d 681, 683 n.3 (5th Cir. 1977). Further, "[a]ny genuine, material conflicts between the facts established by the parties' affidavits and other evidence are resolved in favor of plaintiff for the purposes of determining whether a *prima facie* case exists." *Id.* (citing *Jones v. Petty-Ray Geophysical Geosource, Inc.*, 954 F.2d 161, 1067 (5th Cir. 1992)).

## ANALYSIS

### I.    Personal Jurisdiction

Daniels asks this Court to dismiss Cypers' claims under Federal Rule of Civil Procedure 12(b)(2). This rule requires a court to dismiss a claim if the court does not have personal jurisdiction over the defendant. FED. R. CIV. P. 12(b)(2). After a non-resident defendant files a motion to dismiss for lack of personal jurisdiction, it is the plaintiff's burden to establish that *in personam* jurisdiction exists. *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990) (citing *WNS, Inc. v. Farrow*, 884 F.2d 200, 202 (5th Cir. 1989)). To satisfy that burden, the party seeking to invoke the court's jurisdiction must "present sufficient facts as to make out only a *prima facie* case

supporting jurisdiction," if a court rules on a motion without an evidentiary hearing. *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000).

A court conducts a two-step inquiry when a defendant challenges personal jurisdiction. *Ham v. La Cinega Music Co.*, 4 F.3d 413, 415 (5th Cir. 1993). First, absent a controlling federal statute regarding service of process, the court must determine whether the forum state's long-arm statute confers personal jurisdiction over the defendant. *Id.* And second, the court determines whether the exercise of jurisdiction is consistent with due process under the United States Constitution. *Id.*

It is undisputed that the Texas Long Arm Statute confers jurisdiction to the limits of due process under the Constitution. *Command-Aire Corp. v. Ont. Mech. Sales and Serv. Inc.*, 963 F.2d 90, 93 (5th Cir. 1992). Therefore, the sole inquiry that remains is whether personal jurisdiction offends or comports with federal constitutional guarantees. *Bullion*, 895 F.2d at 216. The Due Process Clause permits the exercise of personal jurisdiction over a non-resident defendant when the defendant has established minimum contacts with the forum state "such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Minimum contacts with a forum state can be satisfied by contacts that give rise to either general jurisdiction or specific jurisdiction. *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994).

Cypers does not assert that the Court has general jurisdiction over Daniels, so the Court's power to hear the case will turn on whether it has specific personal jurisdiction over Daniels. Specific jurisdiction is proper when the plaintiff alleges a cause of action that grows out of or relates to a contact between the defendant and the forum state. *Helicopteros*, 466 U.S. 408, 414 n.8 (1984). Defendants who "'reach out beyond one state' and create continuing relationships and

4

obligations with citizens of another state are subject to regulation and sanctions in the other state for consequences of their actions." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (citing *Travelers Health Ass'n. v. Virginia*, 339 U.S. 643, 647 (1950)). Establishing a defendant's minimum contacts with the forum state requires contacts that are more than "random, fortuitous, or attenuated, or of the unilateral activity of another party or third person." *Id*. For the court to exercise specific jurisdiction, the court must determine "(1) whether the defendant has . . . purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable." *Nuovo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374, 378 (5th Cir. 2002) (citing *Burger King*, 471 U.S. at 475).

If the plaintiff can satisfy minimum contacts, "the burden shifts to the defendant to defeat jurisdiction by showing that its exercise would be unfair or unreasonable." *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006).  In this inquiry, the Court examines five factors: (1) the burden on the nonresident defendant; (2) the forum state's interests; (3) the plaintiff's interest in securing relief; (4) the interest of the interstate judicial system in the efficient administration of justice; and (5) the shared interest of the several states in furthering fundamental social policies. *Burger King*, 471 U.S. at 477. Nonetheless, "[i]t is rare to say the assertion of jurisdiction is unfair after minimum contacts have been shown." *McFadin v. Gerber*, 587 F.3d 753, 760 (5th Cir. 2009) (quoting *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999)).

### A.  Minimum Contacts

A defendant establishes minimum contacts with a state if "the defendant's conduct and

connection with the forum state are such that it should reasonably anticipate being haled into court there." *Burger King*, 471 U.S. at 474 (quoting *World–Wide Volkswagen v. Woodson*, 444 U.S. 286, 297 (1980)). There must be some act whereby the defendant "purposely avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Id.* at 475. However, "even when a defendant has no physical presence in the forum state, a single purposeful contact is sufficient to confer personal jurisdiction if the cause of action arises from the contact." *Nuovo Pignone*, 310 F.3d 374, 379 (5th Cir. 2002).

Daniels asserts Cypers has only generically alleged that Defendants are either residents of Texas or have sufficient minimum contacts with Texas. Daniels argues that he is a citizen of Kentucky and that Cypers has not established the requisite minimum contacts as they pertain to Daniels as an individual. Rather, any contact Daniels has with Texas is in his capacity as a corporate officer for one or more of the Entity Defendants in this suit (Dkt. #17 ¶ 5). These corporate dealings, he concludes, cannot be imputed to establish personal jurisdiction over Daniels as an individual in light of the fiduciary shield doctrine (Dkt. #17 at p. 7). He further argues that Cypers' allegation of a conspiracy theory between Daniels and the Entity Defendants is not enough because "the court must consider 'whether the plaintiff[] made a prima facie showing of minimum contacts with [Texas] by each . . . defendant," which Cypers has not done. *Basic Cap. Mgmt., Inc. v. Dynex Cap., Inc.*, No. 3:17-CV1147-D, 2019 WL 329545 at *4 (N.D. Tex. 2019) (citing *Guidry v. U.S. Tobacco Co., Inc.*, 188 F.3d 619, 632 (5th Cir. 1999)).

Cypers responds that he has not brought a "conspiracy claim or civil conspiracy claim. In fact, the word 'conspiracy' or 'conspired' does not even appear in the" First Amended Complaint (Dkt. #19 at p. 12). He also argues that the fiduciary shield doctrine does not apply to allegations of fraudulent transfer. Lastly, he requests, in the alternative, that the Court permit jurisdictional

discovery regarding Daniels' conduct and contacts with Texas companies. Because Cypers has not brought a claim for any type of conspiracy, the Court will focus on Daniels' contacts as an individual and analyze the contours of the fiduciary shield doctrine.

Daniels is a 34-year resident of Kentucky whose only known contacts with Texas arise from his role as a corporate officer for one or more of the Entity Defendants. In his corporate role, Daniels—at a minimum—took part in the transactions that changed the name of the entity owing the Judgment to Cypers, resulting in Cypers' inability to collect on this Judgment (Dkt. #19 ¶¶ 9–13). Daniels correctly contends that Cypers has not met his burden of establishing a prima facie case of personal jurisdiction over Daniels based on his individual contacts. But there are alternative manners through which the Court may exercise personal jurisdiction over Daniels in this case.

"The fiduciary shield doctrine is triggered when a party seeks to attribute a corporation's contacts to an individual defendant." *LSF4 Loan Invs. I, LLC v. Weingart*, No. 3:06-CV-0419-M, 2006 WL 2370803, at *4 (N.D. Tex. Aug. 15, 2006) (citing *Meyer v. Mendelson*, No. 3:05-CV-1344-M, 2006 WL 66707, *3 (N.D. Tex. Jan. 11, 2006). The doctrine provides that "an individual's transaction of business within the state solely as a corporate officer does not create personal jurisdiction over that individual though the state has in personam jurisdiction over the corporation." *Stuart v. Spademan*, 772 F.2d 1185, 1197 (5th Cir. 1985).[3] The doctrine will not, however, protect Daniels "if he has perpetrated a fraud or engaged in tortious conduct directed at Texas" or if any of the Entity Defendants are Daniels' "alter ego." *Copper & Brass Int'l, Corp. v. Manhattan Brass & Copper Co.*, No. 4:09-CV-023-BE, 2009 WL 10705168, at *3 (N.D. Tex.

---

[3] "The Supreme Court has 'reject[ed] the suggestion that employees who act in their official capacity are somehow shielded from suit in their individual capacity. But jurisdiction over an employee does not automatically follow from jurisdiction over the corporation which employs him.'" *Smith v. Antler Insanity, LLC*, 58 F. Supp. 3d 716, 721 (S.D. Miss. 2014) (quoting *Keeton v. Hustler Mag., Inc.,* 465 U.S. 770, 781 n. 13 (1984)).

Aug. 26, 2009) (citing *Stuart*, 772 F.2d at 1198 n. 12; *Bollinger Indus., L.P. v. May*, 2003 WL 21281634, *2 (N.D. Tex. May 29, 2003). Because Cypers alleges conduct that satisfies the fraud exception to the fiduciary shield doctrine, the Court need not analyze the alter ego exception.

"Under *Calder v. Jones*, 465 U.S. 783 (1984), the exercise of specific jurisdiction may be proper in cases in which a defendant engages in intentional conduct that is calculated to cause injury in the forum state." *Antler Insanity*, 58 F. Supp. 3d at 722. In addition to the case law, "Texas Civil Practice & Remedies Code section 17.042(2) provides that a nonresident who 'commits fraud in whole or in part in this state' has engaged in acts constituting doing business in this state for purposes of the Texas Long Arm Statute" because "[a] defendant who engages in intentional tortious conduct directed at a state must reasonably anticipate being haled into court in that state." *Copper & Brass*, 2009 WL 10705168, at *3 (citing *Calder*, 465 U.S. 789–90).

Cypers asserts that, under this framework, the Court should apply the *Michiana* factors (Dkt. #19 at p. 7). *Michiana* held that personal jurisdiction over an individual for acts through a corporate entity is met only if (1) the defendant—not merely another party or a third person— has direct contact with the forum; "(2) the acts relied on [are] purposeful rather than merely fortuitous; and (3) the defendant [] seek[s] some benefit, advantage, or profit by availing itself of the forum." *Luxury Travel Source v. Am. Airlines, Inc.*, 276 S.W.3d 154, 166 (Tex.App.–Fort Worth 2008, no pet.) (citing *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 785 (Tex. 2005). Daniels agrees that the *Michiana* factors apply but asserts that Cypers has met none of them, as Cypers "has failed to allege any acts allegedly committed by Daniels in his personal capacity directed to Texas" (Dkt. #24 at pp. 4–6).

Daniels' argument misses the mark. Cypers need not point to any acts Daniels committed in his personal capacity. The purpose of the fraud exception in this context is "to prevent use of

the corporate entity as a cloak for fraud or illegality or to work an injustice." *Matthews Const. Co. v. Rosen*, 796 S.W.2d 692, 693 (Tex. 1990) (quoting *Gentry v. Credit Plan Corp.*, 528 S.W.2d 571, 575 (Tex. 1975). Cypers instead must show that Daniels' conduct in his corporate capacity was purposeful and that he sought benefit by availing itself of the forum. *Luxury Travel*, 276 S.W.3d at 166; *Michiana*, 168 S.W.3d at 785 (Tex. 2005).[4] Because the Court at this stage accepts all well pleaded facts as true, Cypers has made this prima facie showing.

"[O]ur jurisdictional inquiry focuses on whether [Cypers] sufficiently established facts suggesting that [Daniels] should have anticipated being haled into a Texas court based on his actions." *Ennis v. Loiseau*, 164 S.W.3d 698, 708–09 (Tex.App.–Austin 2005, no pet.). Cypers asserts that:

> Mr. Daniels purposefully sold the assets of Texas company BankCard Central, LLC and signed with his authority as President and CEO of BankCard Central, not just knowing of the Judgment against it by being a party to the underlying action, but also purposefully issuing false discovery to hide the transfer from Plaintiff. Mr. Daniels did so to receive the profit of the sale of assets from the Texas company to another Texas company or to himself, but without paying the Judgment.

(Dkt. #19 at pp. 7–8). Cypers alleges that Daniels, in his corporate capacity, took these actions. Not another person. Not a third party. Cypers alleges that these actions were purposeful and not "merely fortuitous" because Daniels, having been involved in the California litigation, knew of the underlying Judgment owed by BankCard to Cypers. *Luxury Travel*, 276 S.W.3d at 166; *Michiana*, 168 S.W.3d at 785 (Tex. 2005). Lastly, Cypers alleges that Daniels sought a benefit or advantage

---

[4] As our sister court has noted, "an apparent conflict exists between the reasoning applied in Michiana and the current state of the law in th[e] [Fifth] Circuit." *Copper & Brass*, 2009 WL 10705168, at *4. Where the Texas state courts require more than a single communication with the forum state to satisfy the Texas Long Arm Statute, it is well-established in the Fifth Circuit that "a single communication by a nonresident defendant aimed at the forum state" is enough to satisfy purposeful availment. *Staton Holdings, Inc. v. Hilton Apparel Gr.*, 2007 WL 1964635, *3 (N.D. Tex. Jul. 5, 2007); *Copper & Brass*, 2009 WL 10705168, at *4; *Wien Air Alaska*, 195 F.3d 208; *Brown v. Flowers Indus., Inc.*, 688 F.2d 328, 332 (5th. Cir. 1982)

from these actions—that the sale of assets from BankCard would allow him to escape paying the Judgment owed to Cypers.

"Even if [Daniels] performed these actions in a corporate capacity, he can be held personally liable for fraudulent activity and, therefore, should have anticipated being haled into a Texas court to answer for these actions." *Ennis*, 164 S.W.3d at 710. Accordingly, Daniels' "uncontroverted actions establish minimum contacts between him, as an individual, and the State of Texas." *Id.*

### B.  Fair and Reasonable

"Once a plaintiff establishes minimum contacts between the defendant and the forum state, the burden of proof shifts to the defendant to show that the assertion of jurisdiction is unfair and unreasonable." *Nuovo Pignone*, 310 F.3d at 380 (citing *Wien Air Alaska*, 195 F.3d at 215). The defendant must make a "compelling case," *Burger King*, 471 U.S. at 477, because "it is rare to say the assertion [of jurisdiction] is unfair after minimum contacts have been shown." *McFadin*, 587 F.3d at 759–60 (quoting *Wien Air Alaska*, 195 F.3d at 215). As mentioned, the court analyzes five factors in deciding whether exercise of personal jurisdiction over a nonresident defendant is fair and reasonable: (1) the burden on the nonresident defendant; (2) the forum state's interests; (3) the plaintiff's interest in securing relief; (4) the interest of the interstate judicial system in the efficient administration of justice; and (5) the shared interest of the several states in furthering fundamental social policies. *Burger King*, 471 U.S. at 477.

Daniels does not assert that personal jurisdiction over him would be unfair or unreasonable, so the Court will only briefly discuss these factors. First, there is hardly a burden Daniels would face as a defendant in a Texas venue. He is a corporate officer of at least one of the Entity Defendants, each of which are Texas limited liability companies. Second, Texas has an interest in

10

providing a forum for "redressing injuries inflicted by out-of-state actors." *Id.* at 473. Third, Cypers has an interest in collecting the Judgment owed to him—especially after having gone through litigation beginning in California nearly four years ago. Lastly, the efficient administration of justice in this case—as well as the states' shared interest in social policies—points in favor of jurisdiction. If the Court does not exercise jurisdiction over Daniels in this case, it is possible that the money owed to Cypers will disappear into the corporate vortex. For these reasons, the Court finds it is both fair and reasonable to exercise personal jurisdiction over Daniels.

## II.     Failure to State a Claim

The Federal Rules of Civil Procedure require that each claim in a complaint include a "short and plain statement . . . showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Each claim must include enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A Rule 12(b)(6) motion allows a party to move for dismissal of an action when the complaint fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), the court must accept as true all well-pleaded facts in the plaintiff's complaint and view those facts in the light most favorable to the plaintiff. *Bowlby v. City of Aberdeen*, 681 F.3d 215, 219 (5th Cir. 2012). The court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The court must then determine whether the complaint states a claim for relief that is plausible on its face. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Gonzalez v. Kay*, 577 F.3d 600,

603 (5th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'— 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).

In *Iqbal*, the Supreme Court established a two-step approach for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion. First, the court should identify and disregard conclusory allegations, for they are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 664. Second, the Court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief." *Id.* "This standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements.'" *Morgan v. Hubert*, 335 F. App'x 466, 470 (5th Cir. 2009) (citation omitted). This evaluation will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

For claims of fraud, the pleading standard is heightened. Rule 9(b) states, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." FED. R. CIV. P. 9(b).

Rule 9(b)'s particularity requirement generally means that the pleader must set forth the "who, what, when, where, and how" of the fraud alleged. *United States ex rel. Williams v. Bell Helicopter Textron, Inc.*, 417 F.3d 450, 453 (5th Cir. 2005). A plaintiff pleading fraud must "specify the statements contended to be fraudulent, identify the speaker, state when and where the

statements were made, and explain why the statements were fraudulent." *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 564–65 (5th Cir. 2002). Rule 9(b) seeks to "provide[] defendants with fair notice of the plaintiffs' claims, protect[] defendants from harm to their reputation and goodwill, reduce[] the number of strike suits, and prevent[] plaintiffs from filing baseless claims." *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 190 (5th Cir. 2009) (citing *Melder v. Morris*, 27 F.3d 1097, 1100 (5th Cir. 1994)). Courts are to read Rule 9(b)'s heightened pleading requirement in conjunction with Rule 8(a)'s insistence on simple, concise, and direct allegations. *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997).

"It is an open question in the Fifth Circuit whether Rule 9(b) applies to the pleading of a fraudulent transfer claim." *Clapper v. Am. Realty Invs., Inc.*, No. 3:14-CV-2970-D, 2018 WL 3868703, at *8 (N.D. Tex. Aug. 14, 2018) (citing *AAB Logistics, Inc. v. Forward Air, Inc.*, 2016 WL 8672773, at *10 (N.D. Tex. Nov. 18, 2016); *Janvey v. Alguire*, 647 F.3d 585, 599 (5th Cir. 2011)). "Several courts in this circuit, however . . . have stated that 'where plaintiffs seek to establish the actual intent of the debtor, the enhanced pleading requirements of Rule 9(b) should apply.'" *Id.* (citing *Baker v. Great N. Energy, Inc.*, 2015 WL 11120878, at *3 (N.D. Tex. June 18, 2015); *Vision Bank v. Jordan*, 2012 WL 716097, at *3 (N.D. Tex. Mar. 5, 2012); *In re Brown Med. Ctr., Inc.*, 552 B.R. 165, 168 (S.D. Tex. 2016). Alternatively, "if the statute allows for fraudulent transfer without intent to defraud . . . only the general pleading rules of Rule 8(a) must be satisfied." *E. Poultry Distrib., Inc. v. Yarto Puez*, 2001 WL 34664163, at *2 (N.D. Tex. Dec. 3, 2001).

If a plaintiff does not meet Rule 9(b)'s special pleading standard, the Court may dismiss the pleadings for failure to state a claim under Rule 12(b)(6). *U.S. ex rel. Williams v. McKesson Corp.*, No. 3:12-CV-0371-B, 2014 WL 3353247, at *3 (N.D. Tex. July 9, 2014) (citing *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996)).

Daniels asserts that Cypers has failed to state a claim upon which relief can be granted under either the 8(a) or 9(b) pleading standards. Daniels argues primarily that he is not a debtor under the Judgment as described in the relevant sections of the UFTA, and thus "the only plausible basis for the alleged fraudulent transfer claims against [Daniels] are based upon the allegation that [Daniels] conspired with other Defendants to fraudulently convey assets of" BankCard (Dkt. #17 at p. 15). For this, Daniels argues, he cannot be liable to Cypers as a matter of law (Dkt. #17 at pp. 12–15). He further contends that, regardless, allegations of fraudulent conveyance must meet the heightened 9(b) pleading standard, and Cypers' allegations fall short.

Cypers responds that he has not asserted a conspiracy claim against Daniels and the Entity Defendants. Instead, Cypers alleges that "Daniels knew of the [J]udgment and arranged a sale of the company to avoid liability to Cypers" (Dkt. #19 at p. 12). Cypers asserts that, under a vicarious liability or an alter ego theory, he may proceed against Daniels for the alleged fraudulent transfer (Dkt. #19 at p. 12). Lastly, Cypers argues that the 9(b) pleading standard does not apply to § 24.006 of the UFTA, but, in any case, he has pleaded each of his claims with the requisite particularity (Dkt. #19 at pp. 10–11).

As noted, "[i]t is an open question in the Fifth Circuit whether Rule 9(b) applies to the pleading of a fraudulent transfer claim." *Clapper*, 2018 WL 3868703, at *8 "If the fraudulent transfer statute [p]laintiffs want the [c]ourt to apply requires intent to defraud, the enhanced pleading requirements of Rule 9(b) apply; if the statute allows for fraudulent transfer without intent to defraud, however, only the general pleading rules of Rule 8(a) must be satisfied." *E. Poultry*, 2001 WL 34664163, at *2. Cypers brings claims under both § 24.005 and § 24.006 of the UFTA, of which only the former requires intent to defraud. Tᴇx. Bᴜs. & Cᴏм. Cᴏᴅᴇ §§ 24.005–.006. However, the distinction here is immaterial. The Court finds that, regardless of the pleading

14

standard the Court should apply to the fraudulent transfer claims, Cypers has pleaded his claims with the requisite particularity.

In his First Amended Complaint, Cypers describes the "who, what, when, where, and how" of the fraud alleged. *Bell Helicopter*, 417 F.3d at 453. He alleges that Daniels, the Chief Executive Officer of PHL and President of PHI (formerly BankCard) knew of the outstanding judgment against BankCard, "yet consciously and deliberately chose to structure a sale of BankCard's stock or assets . . . to avoid the [J]udgment" (Dkt. #9 at p. 11). He describes the nature of when and how this took place: "[a]fter the Judgment [on] March 31, 2017 but prior to the Appeals Court mandate on March 4, 2019, Daniels, PHL and BankCard sold the business and the BankCard assets" after having orchestrated a scheme through which the various entities underwent name changes (Dkt. #9 ¶¶ 15–16). This, Cypers alleges, resulted in REV19's ability "to use BankCard and its name as a fully purchased company but avoid the [J]udgment against it because BankCard ha[d] a new manager, entity number, and file number" (Dkt. #9 ¶ 16).

The First Amended Complaint goes on to describe, in detail, the various name changes of the entities, the dates on which these changes took place, and Daniels' alleged involvement in those changes and subsequent sales (Dkt. #9 at pp. 5–6). Accordingly, whether the 8(a) or 9(b) pleading standard applies to these claims, Cypers' allegations survive.

Likewise, Cypers' claims also survive Daniels' contention that he is not a debtor and, thus, immune from liability for the outstanding Judgment or claims of fraudulent transfer. Although Daniels as an individual is not a debtor in the technical sense, Cypers has alleged that Daniels is liable under a vicarious liability or an alter ego theory. Under the alter ego theory, a plaintiff pierces the corporate veil, thereby "expand[ing] the scope of potential sources of relief by extending to individual shareholders or other business entities what is otherwise only a corporate liability." *In*

*re Texas Am. Exp., Inc.*, 190 S.W.3d 720, 726 (Tex.App.–Dallas 2005, orig. proceeding). To dismiss claims against Daniels—who allegedly used his corporate roles to escape paying the Judgment owed to Cypers "would effectively permit the corporate form to be used as a 'cloak for fraud.'" *Matthews*, 796 S.W.2d at 694 (quoting *Gentry*, 528 S.W.2d at 575).

For the Court to grant relief "under these theories, the fact finder must determine whether the relationship between the parties satisfies the tests for imposing liability under the single business enterprise or alter ego exceptions." *Id.* (citing *Airflow Hous., Inc. v. Theriot*, 849 S.W.2d 928, 931 (Tex.App.–Houston [1st Dist.] 1993, no writ); *Gensco, Inc. v. Canco Equip., Inc.*, 737 S.W.2d 345, 347 (Tex.App.—Amarillo 1987, no writ). "Based upon equitable concerns, an alter ego remedy applies when there is such an identity or unity between a corporation and an individual or another entity such that all separateness between the parties has ceased[5] and a failure to disregard the corporate form would be unfair or unjust." *Matter of S.I. Acquisition, Inc.*, 817 F.2d 1142, 1152 (5th Cir. 1987).

It is premature at the motion to dismiss stage for the Court to consider evidence regarding the separation—or lack of separation—between Daniels and the Entity Defendants. Cypers has alleged that Daniels is an alter ego of the Entity Defendants, and that is sufficient at this juncture.

For these reasons, the Court finds that Cypers has alleged with particularity facts that would allow Daniels to be held liable for the outstanding Judgment and for fraudulent transfer.

**CONCLUSION**

It is therefore **ORDERED** that Defendant J. Larry Daniels': (1) Motion To Dismiss For Lack Of Personal Jurisdiction; (2) Motion To Dismiss For Failure To State A Claim Upon Which

---

[5] The remedy is also available if the separation never existed. *See In re Schimmelpenninck,* 183 F.3d 347, 356 (5th Cir. 1999).

Relief Can Be Granted; And (3) Motion To Dismiss For Plaintiff's Failure To Comply With FRCP

9(b) (Dkt. #17) are **DENIED**.

      **IT IS SO ORDERED.**

      **SIGNED this 7th day of January, 2022.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE