# United States District Court

### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| RORY JUSTIN CYPERS, | § | |
| | § | |
| *Plaintiff*, | § | Civil Action No. 4:21-CV-00382 |
| v. | § | Judge Mazzant |
| | § | |
| PHI-BCC, LLC; BANKCARD CENTRAL, | § | |
| LLC; PAYMENT HOLDINGS, LLC; | § | |
| LARRY DANIELS; REV 19 LLC; DOES 1 | § | |
| THRU 20, | | |
| | | |
| *Defendants*. | | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiff Rory Justin Cypers' Motion for Summary Judgment

or, in the Alternative, for Default Judgment (Dkt. #37). Having considered the motions and the

relevant pleadings, the Court finds the motion should be **GRANTED in part and DENIED in**

**part**.

## BACKGROUND

This case arises from a judgment (the "Judgment") issued by the United States District

Court for the Central District of California against Defendant BankCard Central, LLC (hereinafter

"BankCard I"), a processor of credit card services and a Texas limited liability company

(Dkt. #9 ¶ 12).[1] Plaintiff Rory Justin Cypers ("Cypers") obtained this Judgment against BankCard

I on March 31, 2017 for $91,302.00 in damages and $12,852.56 in interest for breach of contract

(Dkt. #9 ¶ 12). BankCard I appealed the case to the Ninth Circuit, but before the court issued its

mandate, BankCard I sold its assets to a successor BankCard Central, LLC (hereinafter "BankCard

II") through a plan allegedly orchestrated by Defendant Larry Daniels ("Daniels"), Defendant

---

[1] Each of the entity defendants in this case is a Texas limited liability company.

Payment Holdings, LLC ("PHL"), Defendant REV 19, LLC ("REV 19"), and BankCard I (Dkt. #9 ¶¶ 15–16). The purchase price for the assets of BankCard I was $3.6 million, payable $3.24 million with $360,000 as a holdback for two years. Cypers alleges that "[t]he consideration for the transaction was entirely paid to entities and persons other than the 'Seller' and [J]udgment debtor, BankCard I" (Dkt. #37 ¶ 19). Indeed, Cypers alleges—and no Defendant contests—that $1,925,122 of the purchase price was distributed to PHL and $37,480 was paid to Daniels. The remainder of the funds were paid to creditors of BankCard I.

Prior to the sale, on or around April 23, 2018, BankCard I changed its name to PHI-BCC, LLC ("PHI"). PHI is a Defendant in this case and an entity Cypers alleges is the same as PHL—the company for which Daniels serves as Chief Executive Officer (Dkt. #9 ¶ 16(b)). Also on April 23, 2018, an entity known as REV 19 BCC—formed by REV 19 in January 2018—changed its name to BankCard (hereinafter "BankCard II") (Dkt. #9 ¶ 16(e)). Then, on January 25, 2019, PHI (previously BankCard I) forfeited under § 171.309 of the Texas Tax Code.[2] Approximately two weeks later, the Ninth Circuit issued its opinion affirming the Judgment of the district court, and it became effective on February 8, 2019 (Dkt. #37, Exhibit A). But to date, no amount of the Judgment has been paid (Dkt. #9 ¶ 20).

---

[2] Recognizing the somewhat complex nature of the entity name changes, the Court provides the following chart, wherein bolded names represent ongoing entities:

| PHI Sub I, LLC | May 21, 2015 changes name → | BankCard Central, LLC (Daniels, President) "BankCard I" | April 23, 2018 changes name → | PHI-BCC, LLC ("PHI") (managed by **Payment Holdings LLC ("PHL")**, Daniels, CEO) → | January 25, 2019 PHI forfeits Under Texas Tax Code |
| **REV 19 LLC "REV 19"** | January 26, 2018 **REV 19** forms REV 19 BCC | REV 19 BCC | April 23, 2018 changes name → | **BankCard Central, LLC "BankCard II"** (managed by REV 19) → | Remains active entity in Texas |

Cypers brings this action under Texas Civil Practice & Remedy Code § 35.008 against Daniels in his individual capacity, as well as PHI, REV 19, BankCard II, and PHL to enforce the outstanding Judgment. Cypers also brings claims under §§ 24.005 and 24.006 of the Uniform Fraudulent Transfer Act ("UFTA") for fraudulent transfers of BankCard's stocks and assets.

On February 21, 2022, Cypers filed the present motion, asking this Court to register the Judgment against PHI in Texas and enter summary judgment against BankCard II, Daniels, and PHL under UFTA (Dkt. #37). In the alternative, Cypers asks that this Court add Daniels and PHL as defendants to the Judgment (Dkt. #37). On March 14, 2022, Daniels filed his response (Dkt. #41). On March 22, 2022, BankCard II and REV 19 filed a response (Dkt. #48). On March 29, 2022, Cypers filed replies to Daniels and to BankCard II and REV 19, respectively (Dkts. #49–50). On August 25, 2022, the Court ordered Plaintiff to file a declaration or affidavit identifying the citizenships of the members of Defendant Bankcard Central, LLC; Defendant Payment Holdings, LLC; REV 19 LLC; and PHI-BBC, LLC (Dkt. #64). On September 1, 2022, Plaintiff filed his Declaration of Reuven "Rory" Cypers in Compliance with August 25, 2022 Order Re: Diversity Jurisdiction (Dkt. #65).[3]

## LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Summary judgment is proper under Rule 56(a) of the Federal Rules of Civil Procedure "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute about a material fact is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.*,

---

[3] Having reviewed Plaintiff's Declaration, the Court determined that it has subject matter jurisdiction over all parties.

477 U.S. 242, 248 (1986). Substantive law identifies which facts are material. *Id.* The trial court "must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment." *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981).

The party seeking summary judgment bears the initial burden of informing the court of its motion and identifying "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" that demonstrate the absence of a genuine issue of material fact. FED. R. CIV. P. 56(c)(1)(A); *Celotex*, 477 U.S. at 323. If the movant bears the burden of proof on a claim or defense for which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure all of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). Where the nonmovant bears the burden of proof, the movant may discharge the burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000).

Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial." *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248–49). A nonmovant must present affirmative evidence to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 257. Mere denials of material facts, unsworn allegations, or arguments and assertions in briefs or legal memoranda will not suffice to carry this burden. Rather, the Court requires "significant probative evidence" from the nonmovant to dismiss a request for summary judgment. *In re Mun. Bond Reporting Antitrust Litig.*, 672 F.2d 436, 440 (5th Cir. 1982) (quoting *Ferguson v. Nat'l Broad. Co.*, 584 F.2d 111, 114 (5th Cir. 1978)). The Court must consider all of the evidence

but "refrain from making any credibility determinations or weighing the evidence." *Turner v.*

*Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

## ANALYSIS

Cypers asks this Court to register the Judgment against PHI in Texas and enter summary

judgment against BankCard II, Daniels, and PHL under UFTA (Dkt. #37). In the alternative,

Cypers asks that this Court add Daniels and PHL as defendants to the Judgment. The Court will

address each request in turn.

## I.    Registration of the Judgment Against PHI in Texas

Cypers asks this Court to register in Texas the Judgment from the Central District of

California against PHI, formerly known as BankCard I.[4] As discussed, the Central District of

California entered the Judgment against BankCard I on March 31, 2017, for $91,302.00 in

damages and $12,852.56 in interest. The case was appealed, but before the Ninth Circuit affirmed

the Judgment, BankCard I underwent a name change, becoming PHI. Then, on January 25, 2019,

the Secretary of State forfeited PHI under § 171.309 of the Texas Tax Code after determining the

entity had not revived its forfeited privileges (Dkt. #37, Exhibit F). Approximately two weeks

later, the Ninth Circuit issued its opinion affirming the Judgment of the district court. To date, no

amount of the Judgment has been paid.

As an initial matter, PHI's forfeiture does not render it immune to suit or assignment of a

previous judgment. Under § 11.356 of the Texas Business and Organizations Code, for three years

after the involuntary termination of an entity under § 11.252, the terminated entity continues in

existence for purposes of:

> (1) prosecuting or defending in the terminated filing entity's name an action or
> proceeding brought by or against the terminated entity; (2) permitting the survival
> of an existing claim by or against the terminated filing entity; (3) holding title to

---

[4] Cypers does not ask that the Court register the Judgment against Daniels, REV 19, or BankCard II.

and liquidating property that remained with the terminated filing entity at the time of termination or property that is collected by the terminated filing entity after termination; (4) applying or distributing property, or its proceeds, as provided by § 11.053; and (5) settling affairs not completed before termination.

TEX. BUS. ORGS. CODE ANN. § 11.356.

PHI entered involuntary forfeiture on January 25, 2019 (Dkt. #37, Exhibit F). This suit to register the Judgment was filed on May 18, 2021 (Dkt. #1 at p. 12). Cypers has, therefore, filed this suit within the three-year post-involuntary forfeiture period.

Further, PHI has not responded to the motion for summary judgment at this time (Dkt. #51). In resolving a motion for summary judgment, "the [C]ourt will assume that the facts as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy" when the opposing party does not controvert the facts and support them with proper evidence. Local Rule CV-56(c). Therefore, if Cypers has provided sufficient facts to establish he is entitled to registration of the Judgment in Texas, the Court must find for Cypers as a matter of law.

> Under 28 U.S.C. § 1963:
>
> A judgment in an action for the recovery of money or property entered in any court of appeals, district court, bankruptcy court, or in the Court of International Trade may be registered by filing a certified copy of the judgment in any other district or, with respect to the Court of International Trade, in any judicial district, when the judgment has become final by appeal or expiration of the time for appeal or when ordered by the court that entered the judgment for good cause shown . . . A judgment so registered shall have the same effect as a judgment of the district court of the district where registered and may be enforced in like manner.

"However, to be registrable, a judgment must be valid and subsisting in the jurisdiction of origin." *Mitchikoff v. JPMorgan Chase Bank, N.A.*, No. CIV.A. 11-1878, 2012 WL 4740309, at *2 (E.D. La. Oct. 3, 2012) (internal citations omitted). Cypers has established that the Central District of California decided the Judgment in his favor. He provided this Court with a certified copy of the Judgment and the mandate from the Ninth Circuit affirming it, which took effect on February 8,

2019 (Dkt. #37, Exhibit A). The Judgment was entered against BankCard I, TIN 32056205845

and Filer No. 802142214 (Dkt. #37, Exhibit A). Cypers seeks to register the Judgment against PHI,

which—for all intents and purposes—is the same company as BankCard I, as demonstrated by the

identical TIN and filer numbers. For these reasons, the Court finds that Cypers has demonstrated

that there is no genuine dispute as to a material fact on this point. Accordingly, the Court will

register the Judgment from the United States District Court for the Central District of California

against BankCard I, TIN 32056205845 and Filer No. 802142214.

## II.      Claims Against Daniels, BankCard II, and PHL Under §§ 24.005 and 24.006

Cypers asks this Court to grant summary judgment against Daniels, BankCard II, and PHL

under the Texas Uniform Fraudulent Transfer Act ("TUFTA") for improperly moving assets

beyond the reach of Cypers in an effort to avoid paying the Judgment. All three defendants respond

that that they are not liable under TUFTA for three reasons: (1) Cypers' § 24.006(b) claim is barred

by the statute of limitations; (2) neither Daniels, BankCard II, nor PHL are Judgment debtors to

Cypers; and (3) Cypers has not shown that the transferor of BankCard I's assets did not receive a

reasonably equivalent value in exchange for the alleged transfer, which precludes a claim of

fraudulent transfer (Dkt. #41). Cypers replies that (1) he seeks summary judgment only under

§24.006(a), not (b); (2) the Defendants need not be Judgment debtors to be liable under TUFTA;

and (3) BankCard I could not have received reasonably equivalent value in exchange for the

transfer of its assets because it became insolvent due to the transfer (Dkt. #48). The Court will

consider summary judgment as to each claim but will first provide an overview of TUFTA.

### A.  TUFTA Landscape

"[A] determination of liability under TUFTA is a two-step process: first, a finding that a

debtor committed an actual, fraudulent transfer, TUFTA § 24.005(a)(1), or a constructive,

fraudulent transfer, . . . and, second, recovery of that fraudulent transfer, or its value, from the transferees." *Spring St. Partners-IV, L.P. v. Lam*, 730 F.3d 427, 436 (5th Cir. 2013).

### 1. Finding an Actual or Constructive Fraudulent Transfer

To succeed on a claim for actual fraudulent transfer under TUFTA, a creditor must show "the debtor transferred assets shortly before or after the creditor's claim arose . . . with actual intent to hinder, delay, or defraud any of the debtor's creditors." *In re Northstar Offshore Grp., LLC*, 616 B.R. 695, 721 (Bankr. S.D. Tex. 2020) (quoting *Matter of Life Partners Holdings, Inc.*, 926 F.3d 103, 117 (5th Cir. 2019)). When analyzing facts under TUFTA, the Fifth Circuit has noted that "[s]ince direct proof of fraud often is not available, courts may rely on circumstantial evidence to establish the fraudulent intent." *Roland v. United States*, 838 F.2d 1400, 1403 (5th Cir. 1988). For this, in determining whether the debtor made the transfer with actual intent to hinder, delay, or defraud, the court considers the non-exhaustive list of the "badges of fraud":

> (1) the transfer or obligation was to an insider; (2) the debtor retained possession or control of the property transferred after the transfer; (3) the transfer or obligation was concealed; (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit; (5) the transfer was of substantially all the debtor's assets; (6) the debtor absconded; (7) the debtor removed or concealed assets; (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred; (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred; (10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and (11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

§ 24.005(b)(1–11). *See also In re Soza*, 542 F.3d 1060, 1066 (5th Cir. 2008). "Not all, or even a majority, of the 'badges of fraud' must exist to find actual fraud. Indeed, '[w]hen several of these indicia of fraud are found, they can be a proper basis for an inference of fraud.'" *Id.* at 1067 (quoting *Roland*, 838 F.2d at 1403).

However, while "TUFTA operates to prevent debtors from defrauding creditors by placing assets beyond their reach, . . . it also protects transferees 'who took in good faith and for a reasonably equivalent value.'" *Janvey v. Golf Channel, Inc.*, 487 S.W.3d 560, 573 (Tex. 2016). For this reason, if "a reasonable equivalent has been given in good faith for a transfer or obligation [the transferee has] a *complete defense* although the debtor is shown to have intended to hinder, delay, or defraud creditors." *Id.* (quoting UNIF. FRAUDULENT TRANSFER ACT, 7A pt. II U.L.A. 6 (2006) (internal quotations omitted) (emphasis in original)); *see also* § 24.009(a) ("A transfer or obligation is not voidable under Section 24.005(a)(1) of this code against a person who took in good faith and for a reasonably equivalent value or against any subsequent transferee or oblige."). Importantly, "whether consideration has value is a distinct inquiry from whether the exchange of consideration enhanced or gave rise to the debtor's insolvency." *Janvey*, 487 S.W.3d at 576.

The "reasonably equivalent value" inquiry is also necessary in the constructive fraudulent transfer analysis. A creditor may bring a constructive fraudulent transfer claim under either §§ 24.005(a)(2) or 24.006(a). Under the former, a transfer is constructively fraudulent if the debtor made the transfer:

> without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor: (A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction;  or (B)  intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

§ 24.005(a)(2). Under § 24.006(a):

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

9

Put differently, "[t]he elements of a constructive fraudulent transfer under Texas law are the same as actual fraudulent transfer except," rather than showing fraudulent intent, the creditor must show "facts demonstrating: (1) a lack of reasonably equivalent value for the transfer; and (2) the transferor was 'financially vulnerable' or insolvent at the time of the transaction." *Matter of Life Partners*, 926 F.3d at 120 (citing *Janvey*, 487 S.W.3d at 562, 566 & n.21).

### 2. Recovery of a Fraudulent Transfer

If a creditor can show that either an actual or constructive fraudulent transfer occurred, the creditor is entitled to remedies enumerated in §§ 24.008 and 24.009. Under this section, in an action for relief against a transfer, a creditor may obtain, among other things, "avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim." § 24.008(a)(1). Additionally, "[i]f a creditor has obtained a judgment on a claim against the debtor, the creditor, if the court so orders, may levy execution on the asset transferred or its proceeds." § 24.008(b). If a transfer is voidable under § 28.008(a)(1), "the creditor may recover judgment for the value of the asset transferred . . . or the amount necessary to satisfy the creditor's claim, whichever is less." § 24.009(b). Notably, liability is not limited to the debtor who made the fraudulent transfer. Under § 24.009, the court may enter judgment against "the first transferee of the asset or the person for whose benefit the transfer was made" or "any subsequent transferee other than a good faith transferee who took for value or from any subsequent transferee." § 24.009(b)(1–2).

### B. Application of TUFTA to Cypers' Motion for Summary Judgment

As mentioned, Daniels, BankCard II, and REV 19[5] respond that they are not liable under TUFTA for three reasons: (1) Cypers' § 24.006(b) claim is barred by the statute of limitations; (2)

---

[5] PHL has not responded to the present motion. Again, in resolving a motion for summary judgment, "the [C]ourt will assume that the facts as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy" when the opposing party does not controvert the facts and support them with proper evidence.

neither Daniels, BankCard II, nor REV 19 are Judgment debtors to Cypers; and (3) Cypers has not shown that the transferor of BankCard I's assets did not receive a reasonably equivalent value in exchange for the alleged transfer, precluding Cypers' claim of fraudulent transfer (Dkt. #41).

First, Cypers does not seek summary judgment under § 24.006(b), so liability under that section is not a consideration currently before the Court. Second, it is immaterial that neither Daniels, BankCard II, nor PHL are Judgment debtors to Cypers—as long as they can be held liable under § 24.009(b)(1) or (b)(2) for an alternative reason. The Court finds that such alternative reason exists: Cypers has provided evidence that both Daniels and PHL received BankCard I's assets via the transfer for their benefit (Dkt. #37, Exhibit M at p. 50–51). Specifically, BankCard II paid $3,740,000 for BankCard I's assets, of which Daniels received $37,480 for his benefit, and PHL received $1,925,122 for its benefit. Further, Cypers evinces that BankCard II is the first transferee of the assets, and BankCard II does not dispute this. Accordingly, if Cypers can show there is no genuine issue as to a material fact that an actual or constructive fraudulent transfer occurred—or that the defense under § 24.009(a) applies—Cypers is entitled to judgment as a matter of law.

### 1. Whether There Was an Actual Fraudulent Transfer Under § 24.005(a)(1)

As discussed, to succeed on a claim for actual fraudulent transfer under TUFTA, a creditor must show "the debtor transferred assets shortly before or after the creditor's claim arose . . . with actual intent to hinder, delay, or defraud any of the debtor's creditors." *In re Northstar Offshore Grp., LLC*, 616 B.R. 695, 721 (Bankr. S.D. Tex. 2020). Importantly, "the transferees' knowing participation is irrelevant under the statute for purposes of establishing the premise of (as opposed to liability for) a fraudulent transfer." *SEC v. Res. Dev. Int'l LLC*, 487 F.3d 295, 301 (5th Cir.

---

Local Rule CV-56(c). Therefore, if Cypers has provided sufficient facts to establish that PHL was a transferee of a fraudulent transfer, the Court must find for Cypers, on this specific claim, as a matter of law.

2007). What matters under § 24.005 is only the "fraudulent intent on the part of the debtor." *Id.*

(internal quotations omitted). BankCard I transferred its assets on December 27, 2017—after the

March 31, 2017 Judgment was entered. None of the Defendants dispute that this transfer occurred

shortly after Cypers' claim arose from the Judgment. The question is whether BankCard I

transferred its assets with actual intent to hinder, delay, or defraud Cypers. The Court looks to the

badges of fraud to make this determination.

While Cypers has provided evidence that several of the badges of fraud are at play, the

Court finds that determining whether an actual fraudulent transfer occurred is a genuine issue of

material fact that a jury must resolve. Accordingly, the Court will not grant summary judgment of

Cypers' claim under § 24.005(a)(1).

### 2. Whether There Was a Constructive Fraudulent Transfer Under §§ 24.005(a)(2) or 24.006(a)(1)

As mentioned, "[t]he elements of a constructive fraudulent transfer under Texas law are

the same as actual fraudulent transfer except," rather than showing fraudulent intent, the creditor

must show "facts demonstrating: (1) a lack of reasonably equivalent value for the transfer; and

(2) the transferor was 'financially vulnerable' or insolvent at the time of the transaction." *Matter*

*of Life Partners*, 926 F.3d at 120 (citing *Janvey*, 487 S.W.3d at 562, 566 & n.2). No party disputes

that BankCard I was financially vulnerable at the time of the transfer, given that it shortly thereafter

changed its name and forfeited under the tax code. The crux of the issue is whether BankCard I

sold its assets for less than a reasonably equivalent value.

Cypers alleges that BankCard I sold all of its assets, "received $0[,] and went insolvent"

(Dkt. #49 ¶ 15). In response, both Daniels and BankCard II contend that the transfer between

BankCard I and BankCard II was made for reasonably equivalent value. Specifically, according to

them, BankCard I sold all of its assets, and received payment in the amount of $3,740,000 from

BankCard II in exchange; BankCard I then used these funds to reimburse loans owed to both Daniels and to PHL, among other creditors (Dkt. #41 ¶18–20). The focus of this inquiry, therefore, is not the amount BankCard II paid for BankCard I's assets. Rather, the summary judgment will turn on whether BankCard I received any "value" when it immediately routed the entirety of the $3,740,000 payment to certain of its creditors—excluding Judgment creditor Cypers from the pool.

The Court finds that Cypers has not met his burden of establishing that BankCard I did not receive reasonably equivalent value in exchange for its assets. Indeed, all parties agree that BankCard II paid $3,740,000 to acquire BankCard I's assets. Although BankCard I routed the entirety of those funds to creditors—including Daniels in his individual capacity and PHL, the parent corporation—Cypers has provided the Court with no legal basis that this subsequent transfer affects the "value" for purposes of finding a constructive fraudulent transfer. For this reason, Cypers fails, at this time, to meet his burden of showing he is entitled to judgment against Daniels, BankCard II, REV 19, or PHL as a matter of law under either § 24.005(a)(2) or § 24.006(a)(1).[6]

### 3. Whether the § 24.009(a) Affirmative Defense Applies to the Actual Fraudulent Transfer

"A transfer or obligation is not voidable under Section 24.005(a)(1) of this code against a person who took in good faith and for a reasonably equivalent value or against any subsequent transferee or oblige." § 24.009(a). Put differently, if "a reasonable equivalent has been given in good faith for a transfer or obligation [the transferee has] a *complete defense* although the debtor is shown to have intended to hinder, delay, or defraud creditors." *Janvey*, 487 S.W.3d at 573. As discussed, the Court determined that whether BankCard I engaged in an actual fraudulent transfer

---

[6] Although PHL has not responded to Cypers' motion for summary judgment, Cypers still fails to meet his burden of showing that he may recover from PHL under a constructive fraudulent transfer theory. Cypers has not shown, as a matter of law, that BankCard I sold its assets to BankCard II for less than reasonably equivalent value. This does not change despite PHL's unresponsiveness.

when it sold the entirety of its assets to BankCard II is a question of fact for a jury. Further, the Court concluded that Cypers failed to meet his burden of showing that he is entitled to judgment as a matter of law regarding his constructive fraudulent transfer claims. Specifically, Cypers has not shown, as a matter of law, that BankCard I sold its assets to BankCard II for less than reasonably equivalent value. Therefore, the Court cannot determine whether the transfer is voidable at this stage.

### III.    Cypers' Alternative Request Under Tex. Civ. Prac. & Rem. Code § 35.008

Under § 35.008 of the Texas Civil Practice & Remedies Code, Cypers alternatively asks the Court to add Daniels and PHL to the Judgment, which the Court has registered in Texas against BankCard I.[7] Cypers argues that a "judgment creditor can bring suit to enforce the judgment against a vicariously liable or alter ego defendant . . . when a judgment creditor cannot collect its judgment from a partnership or corporate judgment debtor" (Dkt. 37 at p. 18). Further, Cypers claims that piercing the corporate veil under an alter ego theory is not a separate cause of action. Rather, this remedial measure "merely expands the scope of potential sources of relief by extending to individual shareholders or other business entities what is otherwise only a corporate liability" (Dkt. #37 at p. 19 (quoting *In re Texas Amer. Exp., Inc.*, 190 S.W.3d 720, 725–26 (Tex. App.—Dallas 2005, no pet.)). Daniels responds that, because he is not a Judgment debtor, § 35.008 does not apply to him. Moreover, Daniels contends that Cypers has failed to establish that Daniels is an alter ego of BankCard I for purposes of piercing the corporate veil.

Section 35 of the Texas Civil Practices & Remedies Code describes the means that allow a court to enforce the judgments of other states. Section 35.008 specifically allows "[a] judgment creditor . . . to bring an action to enforce a judgment instead of proceeding under this chapter."

---

[7] Cypers does not seek to add REV 19 or BankCard II to the Judgment.

Cypers seeks enforcement of the Judgment against Daniels and PHL under the theory that either

Daniels, or PHL, or both, are alter egos of BankCard I.[8] "Under the alter ego theory, courts

disregard the corporate entity when there exists such unity between corporation and individual that

the corporation ceases to be separate and when holding only the corporation liable would promote

injustice." *Mancorp, Inc. v. Culpepper*, 802 S.W.2d 226, 228 (Tex. 1990). The Texas Supreme

Court has stated that:

> An alter ego relationship may be shown from the total dealings of the corporation
> and the individual. This showing may include evidence of the degree to which
> corporate formalities have been followed and corporate and individual property
> have been kept separately, the amount of financial interest, ownership and control
> the individual maintains over the corporation, and whether the corporation has been
> used for personal purposes.

*Id.* (citing *Castleberry v. Branscum*, 721 S.W.2d 270, 272 (Tex. 1986)). Other forms of evidence

to show alter ego include:

> (1) the payment of alleged corporate debts with personal checks or other
> commingling of funds; (2) representations that the individual will financially back
> the corporation; (3) the diversion of company profits to the individual for the
> individual's personal use; (4) inadequate capitalization; and (5) other failure to
> keep corporate and personal assets separate.

*Burchinal v. PJ Trailers-Seminole Mgmt. Co., LLC*, 372 S.W.3d 200, 218 (Tex. App. – Texarkana

2012, no pet.).

As Daniels notes, the only evidence that Cypers provides regarding the relationship among

Daniels, PHL, and BankCard I is specific to the transfer of assets at issue in this case. But, as

mentioned, "[a]n alter ego relationship may be shown from the total dealings of the corporation

and the individual." *Culpepper*, 802 S.W.2d at 228. At this point, Cypers has not provided the

---

[8] Cypers does not seek to enforce the Judgment against Daniels and PHL by arguing that they are subject to the
Judgment as original defendants in the Central District of California litigation.

Court with sufficient evidence to meet his burden of showing that PHL and/or Daniels are alter egos of BankCard I. Accordingly, the Court cannot grant summary judgment on this claim.

**CONCLUSION**

It is therefore **ORDERED** that Plaintiff Rory Justin Cypers' Motion for Summary Judgment or, In the Alternative, For Default Judgment (Dkt. #37) is **GRANTED in part and DENIED in part**.

Plaintiff's claim under 28 U.S.C. § 1963 for registration of the judgment from the United States District Court for the Central District of California against Defendant PHI is hereby **GRANTED**.

Plaintiff's claims for summary judgment under §§ 24.005, 24.006, 24.008, and 24.009 are hereby **DENIED at this time**.

Plaintiff's request for attorney's fees under § 24.013 is hereby **DENIED** at this time.

Plaintiff's request to enforce the judgment from the United States District Court for the Central District of California against Daniels and PHL under § 35.008 of the Texas Civil Practice & Remedies Code is hereby **DENIED at this time**.

**IT IS SO ORDERED**.

 **SIGNED this 14th day of September, 2022.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE