# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| RORY JUSTIN CYPERS, § | |
| § | |
| *Plaintiff*, § | |
| § | |
| v. § | Civil Action No. 4:21-cv-382 |
| § | Judge Mazzant |
| BANKCARD CENTRAL, LLC et al., § | |
| § | |
| *Defendants*. § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiff's Corrected Renewed Declaration of Kenneth J. Catanzarite in Support of Plaintiff's Attorneys' Fees (Dkt. #108). Having considered the Motion, the relevant pleadings, and the applicable law, the Court finds that the Motion should be **GRANTED**.

## BACKGROUND

The facts underlying this case are extensive and set out fully in the Court's Findings of Fact and Conclusions of Law, which the Court incorporates into this Order by reference (Dkt. #101 at pp. 1–7). The Court similarly addressed the case's complex procedural posture in its Memorandum Opinion and Order denying the Affidavit of Kenneth J. Catanzarite in Support of Plaintiff's Attorneys' Fees (Dkt. #106). Accordingly, the Court also incorporates the background of its prior Memorandum Opinion and Order by reference (Dkt. #106 at pp. 1–3).

In their post-trial briefs, Plaintiff Rory Justin Cypers and Defendants BankCard Central, LLC ("BankCard II") and Larry Daniels each claimed entitlement to attorneys' fees under Texas Uniform Fraudulent Transfer Act ("TUFTA") § 24.013 (Dkt. #99 at p. 23 (Cypers); Dkt. #97 at p. 7 (BankCard II); Dkt. #95 at p. 10 (Daniels)). On January 18, 2023, Cypers, BankCard II, and

Daniels each filed affidavits and declarations in support of their claim for attorneys' fees (Dkt. #96 (Cypers); Dkt. #93 (BankCard II); Dkt. #98 (Daniels)). On March 25, 2024, the Court denied Daniels's and BankCard II's requests for attorneys' fees (Dkt. #106 at pp. 4, 8). The Court also denied Cypers's request for attorneys' fees on the basis that Cypers did not meet his burden to establish that his actual attorneys' fees and costs are reasonable and necessary under the appropriate lodestar or *Arthur Andersen* methods (Dkt. #106 at pp. 7–8 (citing *Janvey v. GMAG LLC*, No. 3:15-CV-401-N-BQ, 2021 WL 4059951, at *1–2 (N.D. Tex. Aug. 4, 2021), *aff'd sub nom. Janvey v. GMAG, L.L.C.*, No. 21-10483, 2022 WL 4102067 (5th Cir. Sept. 7, 2022)). But because the Court determined that a fee award would be equitable and just if Cypers properly proved it, the Court's denial of Cypers's request was without prejudice (Dkt. #106 at p. 8). Consequently, the Court gave Cypers fourteen days from the entry of its Order to file a new request under the appropriate standard (Dkt. #106 at p. 8). On April 8, 2024, Cypers timely filed his Corrected Renewed Declaration of Kenneth J. Catanzarite in Support of Plaintiff's Attorneys' Fees (Dkt. #108). The Court now takes up that Corrected Renewed Declaration and treats it as a request for attorneys' fees and costs.

## LEGAL STANDARD

"When fee-shifting is authorized, whether by statute or contract, the party seeking a fee award must prove the reasonableness and necessity of the requested attorney's fees." *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 484 (Tex. 2019). "State law controls both the award of and the reasonableness of fees awarded where state law supplies the rule of decision." *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002). Under Texas law, the movant bears the burden to show the reasonableness of the fees they are owed. *El Apple I, Ltd. v. Olivas*,

370 S.W.3d 757, 760 (Tex. 2012) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) (applying substantive federal law because it is a federal cause of action but also discussing Texas's adoption of the lodestar method in other cases)). The movant may calculate their reasonable and necessary attorneys' fees using either the lodestar method or the market value method. *Id.*; *AMX Enters. v. Master Realty Corp.*, 283 S.W.3d 506, 515 (Tex. App.—Fort Worth 2009, no pet.). Certain causes of action require use of the lodestar method. *City of Laredo v. Montano*, 414 S.W.3d 731, 736 (Tex. 2013). However, even if the law does not require it, if the movant produces evidence of the lodestar calculation, courts typically apply the lodestar calculation. *Id.*

Under TUFTA, "the [C]ourt may award costs and reasonable attorney's fees as are equitable and just." TEX. BUS. & COM. CODE § 24.013. "This provision of TUFTA gives the trial court the sound discretion to award attorney's fees based on the evidence the trial court heard." *Walker v. Anderson*, 232 S.W.3d 899, 919 (Tex. App.—Dallas 2007, no pet.). "The Court's exercise of this discretion is subject to the following limitations: any fees awarded must be reasonable and necessary, and must also be equitable and just." *Janvey v. Dillon Gage, Inc. of Dallas*, 856 F.3d 377, 392 (5th Cir. 2017).

Using the lodestar analysis, the computation of a reasonable attorneys' fee award is a two-step process.[1] *El Apple*, 370 S.W.3d at 760 (citing *Dillard Dep't Stores, Inc. v. Gonzales*, 72 S.W.3d 398, 412 (Tex. App.—El Paso 2002, pet. denied)). First, courts determine the reasonable hours spent by counsel and a reasonable hourly rate, and then multiply the two together to arrive at the base fee or lodestar. *Id.* (citing *Gonzales*, 72 S.W.3d at 412). Second, courts adjust the product of the lodestar calculation up or down "if relevant factors indicate an adjustment is necessary to reach

---

[1] Although state law applies, Texas courts occasionally "draw on the far greater body of federal court experience with lodestar." *El Apple*, 370 S.W.3d at 764–65.

3

a reasonable fee in the case." *Id.* The product of the lodestar method is presumptively reasonable. *Id.* at 765. A court should only modify the lodestar up or down in exceptional cases. *Id.* The Texas Supreme Court measures the reasonableness and necessity of fees by applying the *Arthur Andersen* factors, just as the Northern District of Texas did in *Janvey v. GMAG LLC*, 2021 WL at *1–2.[2] The relevant factors are:

> (1) the time and labor required, the novelty and difficulty of the questions, involved, and the skill required to perform the legal service properly;
>
> (2) the likelihood . . . that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3) the fee customarily charged in the locality for similar legal services;
>
> (4) the amount involved and the results obtained;
>
> (5) the time limitations imposed by the client or by the circumstances;
>
> (6) the nature and length of the professional relationship with the client;
>
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
>
> (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.[3]

*Id.* (applying the *Arthur Andersen* factors to determine the reasonableness of fees requested under TEX. BUS. & COM. CODE § 24.013) (citing *Rohrmoos*, 578 S.W.3d at 469). To determine whether a fee award is equitable and just, courts in the Fifth Circuit look to the following factors:

> (1) whether the case involved egregious conduct;

---

[2] As noted in the Court's March 25, 2024 Order, Texas courts often use the *Johnson* factors in conjunction with the lodestar method to determine reasonableness (Dkt. #106 at p. 6 n.5 and accompanying text (quoting *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) (internal citations omitted)). However, Cypers's renewed request uses the *Arthur Andersen* factors, so the Court will evaluate the reasonableness of Cypers's requested fees under those factors.

[3] The *Arthur Andersen* factors are the factors that Texas courts use to modify the baseline lodestar figure. *See Rohrmoos*, 578 S.W.3d at 500. But as the Texas Supreme Court has recognized, the *Arthur Andersen* factors also overlap with the underlying lodestar calculus. Indeed, as the Texas Supreme Court observed in *Rohrmoos*, "[l]ike [the Fifth Circuit], we recognize that the base lodestar figure accounts for most of the relevant *Arthur Andersen* considerations. And an enhancement or reduction of the base lodestar figure cannot be based on a consideration that is subsumed in the first step of the lodestar method." *Id.* (internal citations omitted).

(2) whether an award of fees accomplishes the goals of TUFTA;

(3) the evidence heard by the trial court; and

(4) evidence of bad faith, vexation, wantonness, oppression, or harassment relating to the filing or the maintenance of the action.

*Janvey v. Dillon Gage*, 856 F.3d at 393 (cleaned up).

## ANALYSIS

Having articulated the legal standard governing this Motion, the Court now turns to the adequacy of Cypers's renewed request for fees and costs (Dkt. #108). Cypers's renewed request "incorporates the entirety of [Kenneth J. Catanzarite's] January 18, 2023 Affidavit and addresses the *Arthur Anders[e]n* factors" as mandated by the Court's March 25, 2024 Order (Dkt. #108 at ¶ 6; Dkt. #106). Cypers requests $34,878.22[4] in attorneys' fees and $6,101.47 in costs under TUFTA § 24.013—the same amount he requested in Catanzarite's January 18, 2023 Affidavit (Dkt. #108 at ¶ 13; Dkt. #96 at ¶ 10). Having already determined that a fee award would be equitable and just, the Court need only address whether Cypers's requested fees and costs are reasonable and necessary under the lodestar method and *Arthur Andersen* factors (Dkt. #106 at p. 7). They are.

### I.   The Lodestar Calculation

The Court begins with the base calculation: *Time x Rate = Presumptively Reasonable*. See *Rohrmoos*, 578 S.W.3d at 497–98 ("the fact finder's starting point for calculating an attorney's fee award is determining the reasonable hours worked multiplied by a reasonable hourly rate"). This

---

[4] Catanzarite's Renewed Declaration states that "the total attorney fees amounted to $34,878.22 and costs were $6,101.47, for a total billing of $40,980.22" (Dkt. #108 at ¶ 13). His previous Declaration states the same (Dkt. #96 at ¶ 10). But the sum of Catanzarite's *stated* fees and costs is $40,979.69, not $40,980.22. Further, the Interim Statement submitted with his Declaration, along with paragraphs eleven and twelve of his Declaration, provide for $34,878.75 in attorneys' fees (Dkt. #108 at ¶¶ 11–12; Dkt. #108-1 at p. 10). Indeed, $34,878.75 + $6,101.47 = $40,980.22. Therefore, the Court will interpret this request as seeking $34,878.75 in attorneys' fees.

base lodestar calculation, when supported by sufficient evidence, reflects presumptively reasonable and necessary attorneys' fees. *Id.* at 499.

Cypers seeks $34,878.75 in attorneys' fees (Dkt. #108 at ¶ 13). In support of his request, Cypers submitted a Renewed Declaration of Kenneth J. Catanzarite (Dkt. #108), along with a "statement summary of time expended by the attorneys of Catanzarite Law Corporation on this Action" ("Interim Statement") (Dkt. #108 at ¶ 8; Dkt. #108-1). The Interim Statement reflects an itemized invoice detailing the hourly rates and time spent on each task performed by two separate attorneys at Catanzarite Law Corporation (Dkt. #108-1).

### A. Reasonable Hourly Rate

"The reasonable hourly rate is the rate 'prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" *BMO Harris Bank, N.A. v. RidgeAire, Inc.*, No. 6:12-cv-550, 2014 WL 12612803, at *1 (E.D. Tex. June 4, 2014) (citing *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984)). The relevant legal community is the community where the district court sits. *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002). "The fee applicant bears the burden to prove by competent evidence that the requested rate is reasonable." *Powell v. Comm'r*, 891 F.2d 1167, 1173 (5th Cir. 1990). Typically, parties establish the reasonable hourly rate through affidavits of other attorneys practicing in the community. *Tollett*, 285 F.3d at 368. However, "[t]he affidavits of counsel may alone be sufficient proof" to establish the reasonable hourly rate. *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 491 (5th Cir. 2012). The trial court itself is also considered an expert as to the reasonableness of attorneys' fees and therefore may exercise its own expertise and judgment in making an independent valuation of

appropriate attorneys' fees. *See Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004) (citing *In re TMT Trailer Ferry, Inc.*, 577 F.2d 1296, 1304 (5th Cir. 1978)).

The Interim Statement accompanying Catanzarite's Renewed Declaration outlines the fee and number of hours that two separate attorneys spent working on this action (Dkt. #108-1). For his legal services, Catanzarite billed at a rate of $400.00 per hour (Dkt. #108 at ¶ 11; Dkt. #108-1 at p. 10). According to his Declaration, Catanzarite offered his services at a discount from his typical rate of $500.00 per hour (Dkt. #108 at ¶ 11). In his Declaration, Catanzarite states that, "based on [his] personal observation of colleagues in [his] locale," his normal $500.00 hourly rate is considered a reasonable average rate considering his experience (Dkt. #108 at ¶ 11). Catanzarite has been practicing law in Texas for more than thirty-three years (Dkt. #108 at ¶ 11). Certainly, Catanzarite is an experienced litigator qualified to opine on prevailing market rates.[5] Because "[t]he affidavits of counsel may alone be sufficient proof" to establish the reasonable hourly rate, Catanzarite's Renewed Declaration, combined with the accompanying Interim Statement, are sufficient evidence of the prevailing market rate. *See Smith & Fuller, P.A.*, 685 F.3d at 491.

The Interim Statement that Cypers submitted alongside Catanzarite's Declaration also includes an invoice of the hours and rate that Tim J. O'Keefe billed in this matter (Dkt. #108 at ¶ 12; Dkt. #108-1 at p. 10). O'Keefe is an associate attorney at Catanzarite Law Corporation (Dkt. #108 at ¶ 12). In his Declaration, Catanzarite stated—and the Interim Statement demonstrates—that O'Keefe billed at a rate of $225.00 per hour (Dkt. #108 at ¶ 12; Dkt. #108-1 at p. 10). Like Catanzarite, O'Keefe billed at a discount from his typical $300.00 hourly rate (Dkt.

---

[5] Catanzarite has been a licensed attorney in Texas since 1991 (Dkt. #108 at ¶ 11). He was first licensed as an attorney in Ohio in 1974 (Dkt. #108 at ¶ 11). He is licensed to practice law "in the State of California, U.S. Federal Districts in California, U.S. Ninth Circuit Court of Appeals, and the U.S. Supreme Court" (Dkt. #108 at ¶ 11).

#108 at ¶ 12; Dkt. #108-1 at p. 10). Catanzarite contends that $300.00 per hour (or $225.00 per hour in this case) is a reasonable average rate in the local market for an attorney with ten years of experience, like O'Keefe (Dkt. #108 at ¶ 12). The Court agrees. Catanzarite's and O'Keefe's rates are consistent with the prevailing market rate for either the Sherman or the Dallas-Fort Worth legal community.[6] *See, e.g., Natour v. Bank of Am., N.A.*, No. 4:21-CV-00331, 2022 WL 3581396, at *3–4 (E.D. Tex. Aug. 19, 2022) (finding a $385.00 hourly rate to be a reasonable charge); *Advanced Physicians, S.C. v. Conn. Gen. Life Ins. Co.*, No. 3:16-CV-02355-G-BT, 2021 WL 6428370, at *6 (N.D. Tex. Dec. 17, 2021) (finding a range from $537.00 to $862.00 per hour to be reasonable rates); *see also Tech Pharm. Servs., LLC v. Alixa Rx LLC*, 298 F. Supp. 3d 892, 906–07 (E.D. Tex. 2017) (finding a range from $450.00 to $860.00 per hour to be reasonable rates). Hence, Catanzarite and O'Keefe both billed reasonable rates in line with the prevailing local market rate.

    **B.    Reasonable Hours Expended**

Next, the Court turns to the number of hours that Catanzarite and O'Keefe billed in this matter. The party seeking reimbursement of attorneys' fees also bears the burden of establishing the number of hours expended by presenting adequately recorded time records as evidence. *See Riley v. City of Jackson, Miss.*, 99 F.3d 757, 760 (5th Cir. 1996). The Court should only include those hours reasonably expended, and exclude any time that is excessive, duplicative, unnecessary, or inadequately documented. *Id.* To prove reasonable hours, the party seeking to recover attorneys' fees "should include the basic facts underlying the lodestar, which are: (1) the nature of the work, (2) who performed the services and their rate, (3) approximately when the services were

---

[6] This Court has previously found that the Dallas-Fort Worth legal market can be an appropriate guide for determining the reasonableness of rates. *See Solferini v. Corradi USA, Inc.*, No. 4:18-cv-293-ALM, 2021 WL 5415293, at *5 (E.D. Tex. Nov. 19, 2021) (collecting cases).

8

performed, and (4) the number of hours worked." *Rohrmoos*, 578 S.W.3d at 494–95 (citing *El Apple*, 370 S.W.3d at 762–63).

The Interim Statement reflects that Catanzarite and O'Keefe billed 42.90 hours and 78.75 hours, respectively, to this matter, for a total of 121.65 hours (Dkt. #108-1 at p. 10). The Interim Statement contains a full billing breakdown for this matter, with each hour accounted for (Dkt. #108-1). Each entry is accompanied by a brief summary of services performed and who performed those services (Dkt. #108-1). For example, the first entry, dated November 11, 2020, suggests that "KJC" (ostensibly, Catanzarite) conducted one hour of document preparation by "[r]eview[ing] and revis[ing] initial draft of complaint for collections" (Dkt. #108-1 at p. 5). For that activity, he billed $400.00 (Dkt. #108-1 at p. 5). In total, the Interim Statement contains fifty-three entries from November 11, 2020, through December 14, 2022, each containing a summary description of services rendered, how many hours were billed on that service, who performed the service, and their hourly rate (Dkt. #108-1 at pp. 5–10). The Court concludes that Cypers's descriptions in the Interim Statement are sufficient to establish reasonableness under lodestar. Indeed, in the Fifth Circuit,

> we are mindful that practical considerations of the daily practice of law in this day and age preclude "writing a book" to describe in excruciating detail the professional services rendered for each hour or fraction of an hour. We also recognize that, in this era of computerized timekeeping, many data processing programs limit the amount of input for any given hourly or daily entry.

*Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 327 (5th Cir. 1995). Using the basic calculation, multiplying the reasonable hourly rate by the reasonable number of hours spent on this matter, the lodestar amount is $34,878.75, broken down as follows:

**Catanzarite**: 42.9 hours x $400/hour = $17,160.00

**O'Keefe**: 78.75 hours x $225/hour = $17,718.75

9

                **Total**: $34.878.75

(Dkt. #108-1 at p. 10). The Court will now turn to whether the facts of this case demand a downward or upward adjustment of the lodestar. They do not.

## II.    The *Arthur Andersen* Factors

Cypers's renewed request and evaluation of the *Arthur Andersen* factors establishes that his requested award is reasonable and necessary (*See* Dkt. #108). Further, his award needs no adjustment. The Court initially denied Cypers's initial request for attorneys' fees on the basis that he did not meet his burden to establish that his actual attorneys' fees and costs were reasonable and necessary under a lodestar or *Arthur Andersen* analysis (Dkt. #106 at pp. 7–8). Indeed, "[g]eneral, conclusory testimony devoid of any real substance will not support a fee award." *Rohrmoos*, 578 S.W.3d at 501–02). Accordingly, the Court ordered Cypers to file a new request that meets the appropriate standard to establish the reasonableness and necessity of his fees (Dkt. #106 at p. 8).

Catanzarite's Renewed Declaration incorporates the same statements as his prior declaration, but also addresses each of the *Arthur Andersen* factors in turn (Dkt. #108 at pp. 4–9). As to the first factor, Catanzarite contends that this matter required a high level of skill given the difficult questions presented and Catanzarite and O'Keefe's "successful . . . uncovering [of] an unusual arrangement" forming the basis of the case (Dkt. #108 at ¶ 16). Second, Catanzarite explains that the 121 combined hours that he and O'Keefe spent on this matter did not preclude other employment with the firm (Dkt. #108 at ¶ 17). Third, Catanzarite again defends the reasonableness of his hourly rate in this case by comparing his rate to the other attorneys involved in the case and noting that Daniels's and BankCard II's attorneys, respectively, charged $49,713.50 and $41,577.50 in legal fees, compared to only $34,878.75 by Catanzarite and O'Keefe (Dkt. #108

at ¶ 15). Fourth, Catanzarite references the $104,154.56 judgment in this case against multiple defendants (Dkt. #108 at ¶ 18). Fifth, Catanzarite concedes that Cypers did not impose a time limitation but directs the Court to the "exceedingly long time" that Cypers waited to be paid after his first judgment against BankCard (Dkt. #108 at ¶ 19). Sixth, Catanzarite confirms that he has maintained a lengthy professional relationship with Cypers (Dkt. #108 at ¶ 20). Seventh, Catanzarite points to his forty-year experience as a practicing attorney and O'Keefe's ten years of experience as an associate attorney (Dkt. #108 at ¶ 21). Eighth and finally, Catanzarite concedes that his fee agreement with Cypers was on a "contingent, results[-]based basis," but adds that any uncertainty of collection arose "simply by the fact that the [first judgment] was refused to be paid" by BankCard (Dkt. #108 at ¶ 22).

The Court is satisfied with Cypers's renewed request for attorneys' fees because it meets the *Arthur Andersen* factors for establishing the reasonableness and necessity of Cypers's fees (*See* Dkt. #108). The Court further concludes that the *Arthur Andersen* factors do not warrant a deviation from the $34,878.75 lodestar calculation.

Finally, the Court must evaluate the reasonableness and necessity of the expenses incurred in connection with the prosecution of this action. Catanzarite's Renewed Declaration states that Catanzarite Law Corporation expended $6,101.47 in costs related to prosecuting this action (Dkt. #108 at ¶ 9). The Renewed Declaration, as corrected, includes additional information explaining how Catanzarite arrived at his final $6,101.47 figure (Dkt. #108 at ¶ 9). Specifically, Catanzarite notes that the total costs, as reflected in the Interim Statement, amounted to $7,301.47 (Dkt. #108 at ¶ 9; Dkt. #108-1 at p. 2). Catanzarite's total costs are itemized in full in the Interim Statement in nineteen entries from May 18, 2021, through December 31, 2022 (Dkt. #108-1 at pp. 3–4). The

description of costs includes flights to Texas and lodging for trial, deposition costs, and costs associated with filing and serving Cypers's Complaint (Dkt. #108-1 at pp. 3–4). Catanzarite later reduced his total expenses by deducting more than $1,000.00 in costs associated with litigation, finally arriving at $6,101.47 in total costs (Dkt. #108 at ¶ 9).[7] After reviewing Catanzarite's Renewed Declaration and the Interim Statement, the Court concludes that $6,101.47 represents Cypers's reasonable and necessary costs in this action.

Accordingly, the Court awards Cypers $34,878.75 in attorneys' fees and $6,101.47 in costs.

## CONCLUSION

It is therefore **ORDERED** that Cypers's Corrected Renewed Declaration of Kenneth J. Catanzarite in Support of Plaintiff's Attorneys' Fees (Dkt. #108), which the Court treats as a motion for attorneys' fees, is hereby **GRANTED**. Plaintiff is awarded attorney's fees in the amount of $34,878.75 and $6,101.47 for costs.

**IT IS SO ORDERED**.

SIGNED this 9th day of December, 2024.

_AMOS L. MAZZANT_
UNITED STATES DISTRICT JUDGE

---

[7] Catanzarite states "[a]lthough the total costs amounted to $7[,]301.47 as reflected in Exhibit 1, I reduced these costs to $6,101.47 after deducting the $848.15 cost of the deposition of Corey Young from REV-19, LLC and BankCard II (Plaintiff settled with same), and after deducting $327.00 as costs for a trial subpoena on one Zahara Alarakhia, who did not end up testifying at trial" (Dkt. #108 at ¶ 9). The Court, having subtracted $848.15 and $327.00 from $7,301.47, has arrived at a different figure than Catanzarite (who arrived at $6,101.47). By the Court's calculation, the subtraction yields a figure of $6,126.32. The Court accepts Cypers's final sum of $6,101.47 as his requested award for costs.